**In the Matter of Candace KINGMA–PIPER.**

**No. 49S00–9008–DI–500.**

Supreme Court of Indiana.

May 20, 1993.

Duge Butler, Jr., Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Jeffrey D. Todd, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

The Respondent, Candace Kingma–Piper, was charged in a complaint for disciplinary action with eight counts involving violations of the *Rules of Professional Conduct for Attorneys at Law*. Pursuant to Admission and Discipline Rule 23(11)(d), the parties reached an agreement and tendered for this Court's approval a "Statement of Circumstances and Conditional Agreement for Discipline". The Respondent also tendered her affidavit pursuant to Admis.Disc.R. 23(17)(a). The agreed facts are as follows.

Count I. In September of 1989, Respondent undertook to pursue Margaret Conklin's divorce and promised to file a petition for dissolution and for temporary restraining order. Respondent received $100 retainer fee and $55 for the filing fee. From September 25, 1989, through October 10, 1989, Respondent failed to communicate with Conklin, despite Conklin's numerous messages.

During a telephone conversation on October 10, 1989, Conklin discharged Respondent, and Respondent agreed to return the $155. Conklin followed up with letters on November 10 and 26, 1989, requesting the refund, but Respondent failed to reply and has not refunded the funds as promised.

Count II. In 1987, Respondent represented Charles McKinney before the Marion County Superior Court on charges of child molesting, a Class C Felony. The client was convicted and, on November 12, 1987, he was sentenced to imprisonment for two years with one year suspended. At the completion of the sentencing hearing, the Court entered a minute entry stating "Mrs. Candace Piper is to file a timely motion to correct error." A week later, Respondent advised the client that she would proceed with the appeal. However, she never filed a motion to correct error nor took any other steps to pursue appellate remedies.

McKinney and Respondent had entered into a fee agreement on November 2, 1987. On March 18, 1988, Respondent wrote a letter to McKinney's father demanding that he pay his son's attorney fee. Respondent then filed suit against the father and the father's wife for nonpayment of her attorney fees, although neither of them had entered into a written fee agreement with Respondent. On April 15, 1988, the father sent Respondent a check for $3,200, and the lawsuit was dismissed on December 27, 1988, pursuant to Trial Rule 41(E).

Count III. On September 26, 1988, Charles McKinney's wife filed for divorce. After he was served with a summons and the petition, McKinney consulted with Respondent and requested that she represent him. Final hearing in the case was set for November 30, 1988. Prior to that date, Respondent told McKinney that she was

attempting to have the final hearing date continued. On November 29, 1988, she told McKinney to attend without her the final hearing scheduled for the following day and instructed him to tell the Court that he was not ready to proceed.

On the day of hearing, November 30, 1988, Respondent told the Court and opposing counsel that she did not represent McKinney, when, in fact, an attorney-client relationship had begun in September of 1988.

Count IV. In November of 1988, Jacqueline Moore retained Respondent to prepare a will and to establish a guardianship for Moore's minor son. Moore was seriously ill with bone cancer and wanted to ensure that her son would be properly cared for after her death. Moore paid Respondent $200 as attorney fee.

Respondent sent a proposed will to Moore who noted changes on the document and returned it to Respondent. However, Respondent did not complete the will or any of the other requested legal work. Moore and her family repeatedly attempted to contact the Respondent, but their calls were never returned.

In April of 1989, Moore sent to Respondent a certified letter requesting that she complete the work as quickly as possible. Respondent again did not respond and did not complete the required work. In June of 1989, Moore sent another letter to Respondent discharging her and requesting refund of the $200. Respondent failed to respond to this letter also. Moore retained another attorney who completed the work a few days before Moore's death.

Count V. In February of 1989, Mary Jahn retained Respondent to represent Jahn and her son in a paternity action and to seek grandparent visitation privileges. After paying Respondent $240 on February 8, 1989, Jahn attempted to contact her numerous times but was unable to find out if Respondent had filed any pleadings. In September of 1989, Respondent told Jahn that the natural mother had been served with summons and that Jahn was to appear for hearing on September 29, 1989, at 9:30 a.m. Jahn appeared in court as instructed

by Respondent, but no hearing was ever held on that date. In fact, a petition to establish paternity had not been filed either by Respondent or by the Marion County Prosecutor's Office.

Jahn again attempted to contact Respondent and again was unable to find out whether Respondent had completed the work. Finally, Jahn dismissed the Respondent and requested refund of the retainer. Respondent did not refund the money.

Count VI. On March 3, 1989, a husband and wife retained the Respondent to represent them in an adoption matter and paid her $200 as retainer. The parties signed a petition on March 10, 1989. Respondent advised her clients that it would take three to six months to complete the adoption, and, on March 14, Respondent told one of the clients that she would file the petition for adoption on that day.

Thereafter, the clients attempted to contact Respondent but were unsuccessful until July of 1989, at which time Respondent told them that the Welfare Department had lost the paperwork and that it would be another 30 days before the Welfare Department would meet with the adopting family. In November of that year, Respondent once again told the clients that the Welfare Department had lost the second set of paperwork and that Respondent would need to send it again.

Between November of 1989 and March of 1990, the clients attempted to reach Respondent but she never returned their calls. In March of 1990, one year after she had been retained, the Respondent advised her clients that she would not be able to handle the adoption and referred them to another attorney. When the clients contacted that attorney, he advised that he was unaware of the case. In fact, Respondent had turned over to him these clients' file together with many others, but she had failed to provide him with any information, and he had not yet reviewed the files. The clients eventually obtained their file. In September of 1990, more than one and a half years after they first sought to file a petition for adoption, the clients discovered

that Respondent had never filed anything in the court.

Count VII. Janice Hubbard arranged for Respondent to represent Hubbard's daughter in a dissolution proceeding. Hubbard was acting on her daughter's behalf because the daughter was on active military duty. On October 25, 1989, Hubbard paid Respondent $255, and Respondent agreed to prepare the necessary pleadings and send them immediately to the daughter for her signature. However, Respondent failed to prepare the pleadings or otherwise to communicate with Hubbard or her daughter.

Count VIII. In June of 1988, the Respondent undertook to represent a client in a paternity/custody matter for which she received $200 as a retainer fee. Respondent stated at the outset of the representation that she would request an immediate hearing, but a hearing was not set. Despite his many telephone calls during the next several months, the client was unsuccessful in contacting the Respondent. On December 8, 1988, and again on April 13, 1989, the client sent to Respondent certified letters demanding return of his $200, but Respondent failed to respond.

■ The findings set out under the eight counts clearly and convincingly establish Respondent's numerous violations of the *Rules of Professional Conduct.* She violated Prof.Cond.Rules 1.1, 1.2(a), 1.3 and 1.4 by failing to provide competent representation, failing to abide by her client's decision, failing to act with reasonable diligence and promptness, and failing to keep her clients reasonably informed. She violated Prof.Cond.R. 3.1 by bringing a frivolous proceeding and Rule 4.4 by using means that had no substantial purpose other than to burden a third person. She made a false statement of material fact to a tribunal and to a third person, in violation of Prof.Cond.Rules 3.3(a)(1) and 4.1. Further, she violated Prof.Cond.R. 8.4(c), 8.4(d) and Rule 1.4 in that her conduct involved dishonesty, deceit, and misrepresentation and was prejudicial to the administration of justice.

In their agreement, the parties have indicated that the appropriate sanction for Respondent's misconduct is a suspension from the practice of law for six months after which the Respondent will become eligible to petition for reinstatement pursuant to Admis.Disc.R. 23(4).

■ The record before us presents an alarming pattern of neglect and deceit. The Respondent repeatedly failed to provide the necessary representation causing inconvenience and harm to her clients. Her disregard of her duties and the interests entrusted to her reflects poorly on the legal system and frustrates the orderly administration of justice. The numerous offenses and the lack of evidence on attempts at restitution are aggravating factors which would generally indicate a lengthier period of suspension. However, we are also mindful of the Commission's judgment as to the sanction and that agreements should be viewed with favor. In light of this, we are inclined to approve the agreed sanction. We are further persuaded by the fact that, in order to be readmitted to the Bar, the Respondent must prove to the Commission and to this Court that she has made full restitution to her clients and can safely be recommended to the legal profession, the courts, and the public as a person fit to be consulted and to represent others.

Accordingly, this Court concludes that the tendered agreement should be approved and the agreed sanction imposed. It is, therefore, ordered that the Respondent, Candace Kingma–Piper, is suspended from the Bar for a period of not less than six months, beginning June 18, 1993.

Costs of this proceeding are assessed against the Respondent.