**In the Matter of Candace KINGMA–PIPER.**

No. 49S00–9308–DI–871.

Supreme Court of Indiana.

Oct. 12, 1994.

DISCIPLINARY ACTION

PER CURIAM.

■ This case is before us on a three count complaint for disciplinary action charging Candace Kingma–Piper, the Respondent herein, with several violations of the *Rules of Professional Conduct for Attorneys at Law.* A hearing officer appointed by this Court pursuant to *Admission and Discipline Rule 23* heard the evidence and tendered her report on findings and conclusions. The Respondent did not appear either before the hearing officer or now before us. When, as in this case, the hearing officer's report is unchallenged, we accept and adopt the findings, but reserve final judgment as to misconduct and sanction. *Matter of Gerde* (1994), Ind., 634 N.E.2d 494; *Matter of Kristoff* (1993), Ind., 611 N.E.2d 116; *Matter of Stover–Pock* (1992), Ind., 604 N.E.2d 606.

■ The Respondent was admitted to the Bar of this state on October 4, 1979. On May 20, 1993, by a *per curiam* opinion, this Court accepted a conditional agreement suspending Respondent for six months, beginning June 18, 1993, without automatic reinstatement. *Matter of Kingma–Piper* (1993), Ind., 613 N.E.2d 843. On July 14, 1993, Respondent was again suspended for failure to pay her attorney registration fee. The findings under this case are as follows:

**Count I.** On May 6, 1988, Respondent met with and agreed to represent Dale and Karyn Kennedy ("the Kennedys") in an action against F.C. Tucker Co. The Kennedys gave Respondent sales documents, including a sales agreement, pertaining to their claim. Respondent told the Kennedys that her fee would come out of the settlement from Tucker so that they did not need to pay her a retainer. Thereafter, the Kennedys tried but had little success reaching Respondent. Eventually, she informed them that their case was scheduled for a court hearing on May 24, 1989. When the Kennedys appeared in the Marion County Circuit Court on the purported date of hearing, they were informed that not only was there no hearing, but there was no record of their claim ever being filed. Respondent failed to appear. After several unsuccessful attempts, the

Kennedys finally reached the Respondent. She advised them that their case had been "bumped" by the court and that another date had been set. At a subsequent meeting, she informed them that the case would most likely be settled and there was no reason to attempt to reschedule it. For a full year thereafter, the Kennedys attempted to contact Respondent with no success. In one week, they attempted this 45 times, with no success. On November 14, 1991, they sent Respondent a certified letter requesting return of their documents and any correspondence that Respondent had on their behalf with F.C. Tucker. Respondent did not answer the letter. The Kennedys contacted the president of the Indiana Bar Association in an attempt to solicit his help. He, too, wrote to Respondent, to no avail. Despite Respondent's representations to the Kennedys that their case had been scheduled for hearing, she never filed the claim against F.C. Tucker.

**Count II.** In June of 1988, Vivian L. Bryant hired Respondent to represent her in a dissolution proceeding, and Respondent entered her appearance. Respondent told Bryant that Respondent's fee would be paid by Bryant's husband. On June 30, 1988, the court scheduled the dissolution action for a contested hearing as second choice on August 1, 1988, and as first choice, on September 19, 1988. At the request of the parties, the court rescheduled the matter for a noncontested hearing on August 22, 1988. However, on that same date and upon the request of the husband's counsel, the court scheduled a contested hearing for September 19, 1988, as originally decided. Notice of this setting was sent to Respondent on August 25, 1988. Respondent never advised Bryant of the September 19, 1988, hearing.

On September 19, 1988, neither Bryant nor Respondent appeared at the final hearing in the dissolution. The court heard testimony offered by the husband and took the matter under advisement. He ordered Respondent to appear on October 6 to show cause why she should not be held in contempt of court for failure to appear. At the contempt hearing on October 6, the court found that Respondent's and Bryant's absences were for good cause but ordered Respondent to notify the court and opposing counsel in writing, by October 14, 1988, of how she intended to proceed. Respondent failed to comply, and opposing counsel moved for a decision based upon testimony taken at the September 19, 1988, hearing.

In December of 1988, Bryant informed Respondent that her husband was not paying child support or spousal maintenance, and Respondent promised to file a petition for contempt. Thereafter, Respondent repeatedly lied to her client about hearing dates having been scheduled. On February 15, 1989, Bryant called Respondent who advised that a hearing had been set for February 16, 1989, at 9:00 a.m. on their contempt petition. Pursuant to this, Bryant drove to the Hendricks County Courthouse, where the case was ending, only to learn that there was no hearing scheduled and no petition for contempt filed. Respondent did not file the promised petition for contempt until March 7, 1989. She again informed Bryant that a hearing on their contempt petition was scheduled for March 16, 1989. This time, Bryant called the court on March 15 in order to confirm the hearing date and was advised that there was no scheduled hearing. In June of 1989, Respondent told Bryant that a hearing on the contempt petition was set for June 29, 1989, at 3:00 p.m. On said date, as prearranged by the Respondent and Bryant, Bryant went to Respondent's office in order to drive to the hearing together. Respondent's staff advised Bryant that there was no hearing scheduled for that day. During late August or early September of 1989, Respondent again informed Bryant that a hearing on the contempt issue was set for September 5, 1989, at 1:00 p.m. Bryant travelled to Hendricks County only to be informed that there was no hearing. Respondent did not appear.

On November 17, 1989, the court issued a final divorce decree based only upon the evidence presented to the court at the September 19, 1988, hearing of which Bryant had no knowledge. Upon receiving the decree in the mail, Bryant contacted Respondent, questioning how a divorce decree could be issued without a hearing. Respondent

insisted that the decree was not valid and that Bryant was not divorced. On November 22, 1989, Respondent promised to attempt to set aside the decree immediately.

After the divorce was granted, Bryant began to receive regular child support payments. On November 22, 1989, the court set Bryant's petition for contempt hearing on December 13, 1989. The day prior to this scheduled hearing, Respondent told Bryant that the hearing would not take place without any explanation as to why. On December 13, 1989, opposing counsel filed a Minute entry advising the court that the pending contempt petition had been resolved by agreement of the parties and that a written stipulation would be submitted to the court. Respondent neither consulted Bryant nor advised her afterwards of the agreement. On January 12, 1990, Respondent again filed a motion for a hearing on the contempt issue, and the court ordered the former husband to appear on February 26, 1990. But on February 26, 1990, all action was stayed due to a bankruptcy proceeding filed by the former husband.

Thereafter, Respondent continued to lie to her client about supposedly scheduled hearings. In April of 1990, Respondent told Bryant that a hearing was set for April 13, 1990. In June of 1990, Respondent told Bryant that a hearing was set for July 5, 1990. Bryant even went to Respondent's office in order to drive to this hearing with Respondent, only to be told that there was no hearing. In August of 1990, Respondent told Bryant that there would be a hearing on August 14, 1990. On September 12, 1990, Bryant met with Respondent in order to fill out a grievance against the presiding judge for "his" numerous delays. During this meeting, Respondent fabricated an unlikely story. She advised Bryant that she had friends at the Disciplinary Commission. Through these friends, Respondent supposedly had learned of corruption within the offices of the Hendricks County Sheriff and Prosecutor and also that the judge presiding in Bryant's dissolution was a party to this criminal activity. Respondent told Bryant that if she pursued a grievance against the judge, Bryant might be stopped for speeding in Hendricks County and might "disappear." Respondent lied once more and represented that a hearing was scheduled for April of 1991. In September of 1991, Bryant made demand for her client file. Respondent ignored the request.

**Count III.** On January 23, 1991, Donna Mann and her daughter, Karen Bastin, hired Respondent to represent Bastin in a dissolution of marriage proceeding. Mann paid Respondent $200 as retainer and $55 for a filing fee. Respondent promised to file the petition for dissolution and immediately request a restraining order prohibiting Bastin's husband from entering their home. Thereafter, Mann and Bastin each tried to contact Respondent but she did not return any of their calls. Mann and Bastin worked in the City–County Building in Indianapolis where they occasionally encountered Respondent. On those few occasions when Respondent talked to them, she advised that she was awaiting action by opposing counsel. Respondent never filed a petition for dissolution or for restraining order, as she had promised. On April 6, 1991, Mann sent Respondent a certified letter discharging her and requesting return of the retainer and filing fee. Respondent failed to return any of the money or documents provided to her by the client.

From the foregoing findings, we conclude that Respondent failed to abide by her clients' decisions, in violation of Prof.Cond.R. 1.2(a); she neglected matters entrusted to her, in violation of Prof.Cond.R. 1.3; she failed to keep her clients reasonably informed, in violation of Prof.Cond.R. 1.4(a); she violated Prof.Cond.R. 1.15(b) by not returning client documents and files as requested; she knowingly failed to comply with court orders, thereby violating Prof.Cond.R. 3.4(c); she violated Prof.Cond.R. 1.16(d) by failing to refund unearned fees; and she violated Prof.Cond.R. 8.4(c) by repeatedly lying to clients.

The findings before us present an alarming pattern of repeated misconduct that calls into question Respondent's fitness as a lawyer. We find most disconcerting Respondent's unflappable lying techniques. Had Respondent expended as much effort on truthful communications with her clients as she did on her

preposterous lies, she may have concluded her representations with better results. As noted previously, Respondent is presently suspended from the practice of law in this state but she is eligible to petition for reinstatement. The numerous acts of misconduct exhibited in the present case, Respondent's total lack of candor, and our duty to protect the public from unfit lawyers, persuade us that, in addition to her present suspension, Respondent should be suspended for no less than two (2) years. At the completion of the period of suspension, Respondent may seek reinstatement and demonstrate to this Court that she meets all requirements of *Admission and Discipline Rule 23(4)*, has a proper understanding of the standards imposed upon members of the Bar and will conduct herself in conformity therewith. It is, therefore, ordered that Candace Kingma–Piper is hereby suspended from the practice of law in Indiana for a period of not less than two (2) years, beginning immediately. Costs of this proceeding are assessed against Respondent.