**In the Matter of Alphaeus S. WOOLBERT.**

No. 48S00–9303–DI–328.

Supreme Court of Indiana.

April 6, 1995.

Montague Oliver, Jr., Anderson, for respondent.

Donald Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Indiana Supreme Court Disciplinary Commission charged the respondent, Alphaeus S. Woolbert, in a single count *Verified Complaint for Disciplinary Action* with failing to act with reasonable diligence and promptness in representing a client, in violation of Rule 1.2 of the *Indiana Rules of Professional Conduct for Attorneys at Law;* with failing to keep his clients reasonably informed, in violation of *Prof.Cond.R. 1.4(a);* and with failing to surrender papers and property to which his clients were entitled, in violation of *Prof.Cond.R. 1.16(d).*

A hearing officer appointed by this Court pursuant to *Admission and Discipline Rule 23* heard the case and tendered his report on *Findings of Fact and Conclusions of Law.* Neither party has objected to the hearing officer's report. When, as in this case, the hearing officer's report is unchallenged, we accept and adopt the findings but reserve final judgment as to misconduct and sanction. *Matter of Kingma–Piper* (1994), Ind., 640 N.E.2d 1060; *Matter of Gerde* (1994), Ind., 634 N.E.2d 494; *Matter of Kristoff* (1993), Ind., 611 N.E.2d 116; *Matter of Stover–Pock* (1992), Ind., 604 N.E.2d 606. We now accept and adopt the hearing officer's findings.

Accordingly, we find that the respondent was admitted to the Bar of the State of Indiana in 1950. During 1987, the respondent represented a husband and wife, as plaintiffs, in a civil lawsuit in the Madison County Court. The respondent agreed to represent them on a contingency fee basis, but did not have a written compensation agreement with them.

The case was tried before a jury which returned a verdict for the defendant and against the respondent's clients. The clients advised the respondent they wanted to pursue an appeal. Again, there was no written fee agreement, but the respondent understood that payment for his work on the appeal would be contingent on the final outcome of the case. The respondent requested and received $2,000 to cover the out-of-pocket costs of prosecuting the appeal. The clients paid with a check which the respondent cashed. He kept the money from the check either on his person in cash or in an office safe and never deposited the funds into a trust account.

Thereafter, he filed with the trial court a motion to vacate the judgment and set aside the jury verdict and a motion to correct errors pursuant to Trial Rule 59. After a hearing, the trial court denied both motions on October 13, 1987. On October 27, 1987, the respondent filed a praecipe for the preparation of the record of the proceedings but he failed to file a pre-appeal statement with the Clerk of the Court of Appeals within ten days, as was required by Appellate Rule 2(C)(1), then in effect. On January 26, 1988, he again filed with the trial court another motion to vacate the judgment and another motion to correct errors. The trial court held a hearing and, on February 8, 1988, again denied the post-trial motions. On March 7, 1988, the respondent once again filed a praecipe for preparation of the record for use on appeal.

On March 18, 1988, the respondent presented a pre-appeal statement to the Clerk of the Court of Appeals. However, because the respondent tendered the statement one day past the ten day time limit, the statement was not accepted for filing but was stamped only "received". The respondent met personally with two judges from the Court of Appeals in an attempt to obtain relief, without any success. He also filed a petition

seeking to have his pre-appeal statement deemed filed. On May 26, 1988, the Court of Appeals denied the petition and dismissed the appeal, finding that the pre-appeal statement had not been timely filed and, thus, the right to appeal had been forfeited.

The respondent did not inform his clients of the dismissal of their appeal. He paid $1,147 for the preparation of the record for appeal. On May 6, 1988, he tendered the record to the Clerk of the Court of Appeals. The record, however, was not in acceptable final form because the respondent had not made marginal notations in conformity with Appellate Rule 7.2(A)(3)(a). About one year after the unfavorable jury verdict, the clients began inquiring about the status of their appeal. They left numerous telephone messages for the respondent, which he did not return. Also, there were several cancelled appointments.

In early October of 1990, the clients visited the respondent's office and requested the return of their papers. They were informed that the file was stored in the basement and could not be produced immediately. The following day, one of the clients went to the trial court where, for the first time, she was informed that the appeal had been dismissed more than two years ago because of a missed deadline. Immediately after this, the client went to the respondent's office, confronted the respondent's secretary and the respondent, and demanded a refund of the $2,000. During this exchange, the respondent advised the clients that their appeal had been dismissed.

In December of 1990, the clients retained an attorney to seek the return of their papers and an accounting of the funds paid to the respondent. The respondent did not respond to the attorney's request. He has never provided an accounting of the $2,000.

However, after the Disciplinary Commission filed the *Verified Complaint for Disciplinary Action*, charging the respondent with professional misconduct, and after the case was first set for trial, the respondent refunded $2,000 to the clients. He has never returned any of the client's papers to them but, after the *Verified Complaint for Disciplinary Action* was filed, he did provide a copy of the clients' file to counsel for the Commission.

These findings clearly and convincingly establish that the respondent engaged in the charged misconduct. He violated *Prof. Cond.Rule 1.3* [1] when he failed to file a timely pre-appeal statement. By failing to keep his clients informed and failing to advise them of the dismissal of their appeal, the respondent also violated *Prof.Cond.R. 1.4(a)* [2]. The respondent violated *Prof.Cond.R. 1.16(d)* [3] in that he failed to surrender the papers and property to which the clients were entitled upon the termination of his representation. He failed to return any portion of the fee for nearly five and a half years after the appeal was dismissed and for more than three years after the October, 1990, meeting during which the respondent's services were terminated. In addition, he failed to provide the clients with any accounting of the fee. We agree with the hearing officer's observation that the initial error in missing a deadline, standing alone, perhaps could have been excused as merely a mistake not warranting discipline. However, this single act of lack of diligence was greatly aggravated by the respondent's failure to disclose his error to his clients for over two years, his failure to return the clients' papers, failure to provide an accounting, and the unjustifiable delay in returning unearned funds.

■ The findings also establish a number of additional violations of the *Rules of Profes-*

---

1. *Prof.Cond.R. 1.3* provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

2. *Prof.Cond.R. 1.4(a)* provides: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

3. *Prof.Cond.R. 1.16(d)* provides: "Upon termination of representation, a lawyer shall take

steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

*sional Conduct* which were not charged under the verified complaint. Such conduct, however, is particularly relevant to the assessment of appropriate discipline.[4] The respondent undertook to represent these clients on a contingency fee basis without reducing the essential terms of the agreement to writing, as is required by *Prof. Cond.R. 1.5(c).*[5] The respondent also testified that he routinely did not prepare written fee agreements in contingency fee cases. He further admitted that he cashed the $2,000, representing a deposit against the costs of the appeal, and failed to deposit the funds in a separate client trust account, as is required by *Prof.Cond.R. 1.15.*[6] He testified that he does not maintain a trust account and routinely keeps client monies in the form of cash. He indicated he believed this method to be proper and that he had no intention of changing this practice until the Supreme Court told him to do otherwise. The respondent further testified that it was his practice, when prosecuting an appeal, first to file the record with the Clerk, and only then, after checking the record back out, to add the required marginal notations. This practice is in conflict with requirements of the Rules of Appellate Procedure, Rule 7.2(A)(3)(a)[7]. We

note the respondent's date of admission and the fact that the rules of practice and procedure as well as the rules for professional conduct have changed considerably during the respondent's career. This, however, cannot justify his persistently recalcitrant attitude toward the rules of his profession. These substantial aggravating factors which convince us that a period of suspension, with automatic reinstatement, is warranted. We, thus, conclude that the respondent should be suspended from the practice of law for ninety (90) days, after which he shall be reinstated automatically. It is, therefore, ordered that Alphaeus S. Woolbert is suspended from the practice of law for ninety (90) days, beginning May 1, 1995, after which he shall be reinstated automatically.

Costs of this proceeding are assessed against the respondent.

4. The determination of appropriate disciplinary sanction involves an examination of the ethical duty violated by the lawyer, the lawyer's mental state (intentionally, knowingly, or negligently?), the extent of actual or potential injury caused by the misconduct and the existence of mitigating or aggravating circumstances. *In re Cawley* (1992), Ind., 602 N.E.2d 1022; *American Bar Association Model Standards for Imposing Lawyer Sanction, Theoretical Framework.*

5. Prof.Cond.R. 1.5(c) provides: "... A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

6. *Prof.Cond.R. 1.15(a)* provides: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a repre-

sentation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of (five years) after termination of the representation."

*Prof.Cond.R. 1.15(c)* provides: "When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."

7. Appellate Rule 7.2(A)(3)(a) provides, among other things: "... Notations shall be made on the margin of each page of the transcripts of the evidence indicating all motions and the rulings thereon; the exhibits, if any; the instructions given and refused; all rulings of the court; and where the evidence is set out by deposition or otherwise, the name of each witness, and whether the examination is direct, cross, or redirect."