**In the Matter of Frederick F. FROSCH.**

No. 49S00–9212–DI–979.

Supreme Court of Indiana.

Dec. 8, 1994.

Duge Butler, Indianapolis, for respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

**DISCIPLINARY ACTION**

PER CURIAM.

The Respondent, Frederick F. Frosch, was charged in a two count *Verified Complaint for Disciplinary Action* with violating *Rules 1.15, 8.4(b), 8.4(c) and 8.4(d) of the Rules of Professional Conduct for Attorneys at Law.* The misconduct arose out of Respondent's handling of client funds. This Court appointed a hearing officer pursuant to *Admission and Discipline Rule 23* who, after a hearing thereon, filed her report on May 6, 1994, concluding that Respondent engaged in the charged misconduct. The case is before us now for review and final decision.

On June 24, 1994, Respondent petitioned for leave to file a belated transcript, and the Commission objected. Without leave of court, Respondent tendered two volumes of transcript on August 30, 1994. On September 13, 1994, Respondent filed a *Memorandum in Support of Request to Tender Transcript and on Petition for Review.* The Disciplinary Commission challenged this and filed a *Memorandum on Sanction,* urging disbarment. We see no harm in allowing the

belated filing and, therefore, find that it should be accepted.

▮ In this *de novo* review, the hearing officer's findings receive emphasis due to the unique opportunity for direct observation of witnesses, but this Court remains the ultimate fact-finder and arbiter of misconduct and sanction. *Matter of Geisler* (1993) Ind., 614 N.E.2d 939; *Matter of Smith* (1991), Ind., 579 N.E.2d 450. Upon review of all submitted matters, we find that Frederick F. Frosch is a member of the Bar of this State, having been admitted on May 17, 1976.

**Count I.** On December 18, 1990, $17,667.88 was deposited in Respondent's Client Trust Account at Union Federal Savings Bank. The funds belonged to an elderly resident of a nursing home who had inherited them earlier that year. The client's family was unsure of how to handle the inheritance, and entrusted it to Respondent with the understanding that the money was to be paid out by the Respondent for the benefit of the elderly beneficiary. Respondent, however, wrote numerous checks on the trust account for payment of his personal and business expenses totally unrelated to the client. Between December of 1990 and July of 1991, Respondent spent at least $20,000 of client funds for personal expenses.

The list was extensive. He wrote checks for cash and for numerous rent obligations, for several of his insurance policies, for his mortgage, for a long list of utility payments, for personal loan obligations, and for payment on credit card accounts. On January 29, 1991, the balance in the trust account dropped below $17,667.88 and remained below that amount until January 31, 1990. Respondent continued to write checks on the client trust account for personal expenses to a tavern, for his parking, for another insurance policy, for the purchase of jewelry, for payment on his Visa account, more utility payments, auto rental, for work on his Chevy Blazer, and for additional personal loan obligations.

On March 4, 1991, the balance in Respondent's trust account again dropped below $17,667.88 to $13,488.38. From that date until July 7, 1991, the balance in the account remained below the amount deposited from the entrusted funds, with the balance falling to a low of $296.33 on June 13, 1991. After March 4, 1991, undaunted, Respondent continued to use the account for his personal needs. He used the account to pay more utility bills, rent payments, credit card obligations, parking expenses, auto rental expenses, auto repair expenses, personal loan obligations, credit card balances, and for a 1983 Cadillac purchased in his name. On June 4, 1991, a check written on the trust account for $926.50 was returned due to insufficient funds. Thereafter, Respondent still continued to draw on his client trust account for payment to the American Dart Organization, an organization in which he was a member, for rental payments, moving expenses, more cash, utilities, and parking.

On July 7, 1991, Respondent deposited a settlement check of $52,000 belonging to two other clients, which deposit brought the balance in Respondent's trust account above $17,667.88 for the first time since March of 1991.

The hearing officer found that between December 1990 and July of 1991, Respondent was the only person who deposited funds into the trust account, the only person who wrote checks on the account, and the only person that had access to the account. Respondent presented no evidence to account legitimately for the depleted balance of $296.33 in the trust account, when he was the only person with control over the account. The hearing officer also concluded that, although Respondent claimed that some funds were due him as attorney fees, he had failed to segregate any of the account funds but simply wrote checks on the account for purely personal expenses.

Respondent challenged the findings, claiming that the hearing officer (1) ignored evidence that funds that should have been placed into the account were diverted by others and (2) that funds were eventually spent on the elderly beneficiary. Respondent is charged with failing to hold client funds separate from his own, in violation of *Prof.Cond.R. 1.15;* with committing conversion, a criminal act, that reflects adversely on his fitness as a lawyer, in violation of *Rule*

*8.4(b);* and with engaging in conduct that involves dishonesty, fraud and deceit, in violation of *Rule 8.4(c).* Whether other funds should or should not have been deposited in Respondent's client trust account has no bearing on these issues. But we also note that the hearing officer heard and observed the witnesses and their exhibits and carefully weighed all arguments. Her assessment of the credibility of witnesses, the weight of evidence, and her judgment in reconciling conflicting evidence carries great weight. *Matter of Kern* (1990), Ind., 555 N.E.2d 479; *Matter of Geisler* (1993), Ind., 614 N.E.2d 939. Our examination of the record indicates that the hearing officer's findings properly reflect the evidence presented at hearing. The evidence is uncontroverted that Respondent used his client's funds to satisfy personal obligations. After depositing some $17,000 of client's funds in his client trust account, Respondent depleted the account to a point where a check was returned for insufficient funds. This was not the result of a rare lapse in judgment but was Respondent's established method and means for paying his personal financial obligations. The Commission acknowledges in its *Memorandum of Sanction* that the Respondent eventually paid the funds on behalf of the beneficiary. This, however, cannot alter the fact that for some seven months Respondent used funds from his client trust account for the payment of personal expenses. Respondent knowingly and intentionally exerted unauthorized control over entrusted funds belonging to his client. By so doing, he engaged in the criminal act of conversion in violation of *Indiana Code 35–43–4–3.* Such conduct reflects adversely on his honesty, trustworthiness and fitness as a lawyer, and is violative of *Prof. Cond.R. 8.4(b).* Also, Respondent failed to hold his client's funds separate from his own property, in violation of *Prof.Cond.R. 1.15,* and engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of *Prof.Cond.R. 8.4(c).*

**Count II.** Respondent maintained an interest bearing client trust account at Union Federal Savings Bank of Indianapolis. Respondent admitted that he failed to remit to his clients the interest earned on their funds. By so doing, Respondent committed conversion, a criminal act in violation of *Indiana Code 35–43–4–3,* and engaged in conduct that reflects adversely on his honesty, trustworthiness and fitness as a lawyer, in violation of *Prof.Cond.R. 8.4(b).* He also violated *Prof. Cond.R. 1.15* by failing to hold client funds separate from his own.

Having concluded that Respondent engaged in the charged misconduct, we must determine an appropriate disciplinary sanction. This involves an analysis of the offense, the actual or potential injury, Respondent's state of mind, the duty of this Court to preserve the integrity of the profession, the risk to the public, and any mitigating or aggravating factors. *Matter of Clanin* (1993), Ind., 619 N.E.2d 269; *Matter of Stover–Pock* (1992), Ind., 604 N.E.2d 606; *Matter of Cawley, Jr.* (1992), Ind., 602 N.E.2d 1022. The very nature of Respondent's misconduct, misuse and conversion of entrusted client funds, warrants our strictest scrutiny. Few other acts of misconduct impugn the integrity of the Bar or place the public more at risk than the misuse of client funds. Respondent's pattern of misconduct, some 100 checks drawn on his client trust account for the payment of personal obligations, establishes the most culpable state of mind, that of intent. See *American Bar Association Model Standards for Imposing Lawyer Sanction, Theoretical Framework.* We also note that as a result of an earlier disciplinary action, Respondent was suspended for 60 days for violating *Prof.Cond.R. 1.15. Matter of Frosch* (1992), Ind., 597 N.E.2d 310. This aggravating factor strongly indicates Respondent's inability to conform his conduct to the *Rules of Professional Conduct.* We are further guided by the *American Bar Association Standards for Imposing Lawyer Sanction, Standard 4.1,* which provides that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury to a client.

In light of the foregoing considerations and the findings of fact, we conclude that disbarment is clearly warranted. It is, therefore, ordered that Frederick F. Frosch is hereby

disbarred. Costs of this proceeding are assessed against the Respondent.