In the Matter of Stephan J. LUSTINA.

No. 45S00–9405–DI–439.

Supreme Court of Indiana.

March 6, 1995.

John J. Halcarz, Highland, for respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM

The Indiana Supreme Court Disciplinary Commission (Commission) charged the respondent with a single count of professional misconduct, alleging that he commingled and misused his clients' funds. Pursuant to *Indiana Rule of Admission and Discipline 23, Section 11(g)*, the respondent and the Commission entered into and tendered for this Court's approval an agreement as to the facts and appropriate discipline. Upon review, we find that the agreement should be approved. The facts are as follows:

The respondent is an attorney licensed to practice law in the State of Indiana, having been admitted to the Bar in 1972. The respondent had represented two clients, a husband and a wife. On May 3, 1991, the respondent received on behalf of these clients $15,000 in insurance settlement checks. Pursuant to a contingent fee agreement with said clients, the respondent was to receive as his fee one-third of the settlement, leaving the clients with a net recovery of $10,000. The respondent deposited the $15,000 in his trust checking account on the day of receipt.

From that date, May 3, 1991, to July of 1991, the respondent deposited personal funds into the same trust account and used the account for payment of his personal expenses. Also during that same time, the trust account was the respondent's only active checking account of any type. Commencing on May 7, 1991, and continuing until the end of July, 1991, the balance in that account was always below ten thousand dollars ($10,000). On July 19, 1991, the respondent paid the ten thousand dollars ($10,000) to his clients by endorsing a cashier's check payable to the respondent but provided to him by a third party.

In January of 1992, the respondent answered an inquiry from the Commission concerning a "bounced" $446.38 check the respondent had written to a restaurant. The respondent stated in writing that he had used the trust account for payment of this personal expense by mistake. The respondent knew that this statement was false at the time he made it.

Based upon the respondent's failure to honor the foregoing check, the restaurant filed suit and obtained a default judgment against the respondent for treble damages. The respondent paid the default judgment plus costs on January 17, 1992.

The parties also agree that, at all times during the course of their representation and during the Commission's investigation of this matter, the clients expressed their utmost satisfaction with the respondent's legal representation and were not the initiators of the request for investigation by the Commission. Further, they had agreed to wait until July 19, 1991, to receive their share of the settlement proceeds. However, they did not authorize the respondent to use their settlement proceeds to pay his personal expenses. The respondent has been unable to produce or locate his file on these clients or a copy of the cashier's check used to pay their settlement proceeds to them.

By way of mitigation, the parties agree that this incident is the respondent's first disciplinary grievance since he was admitted in 1972. The respondent had gone through a period of substantial financial hardship. Also, he has contributed time and effort to a number of civic and legal organizations, including his local bar association.

The foregoing findings establish clearly and convincingly that the respondent commingled client funds with his personal funds, in violation of *Prof.Cond.R. 1.15(a);* he knowingly made a false statement of material fact in connection with a disciplinary matter, in violation of *Prof.Cond.R. 8.1(a);* he failed to keep complete records for five years after terminating the representation, in violation of *Prof.Cond.R. 1.15(a);* by using his clients' funds as his own he engaged in criminal conduct, in violation of *Indiana Code 35–43–4–3,* and, thus, violated *Prof.Cond.R. 8.4(b) and 8.4(c).*

 The parties have agreed that an appropriate disciplinary sanction for the foregoing misconduct is a suspension from the practice of law for a period of one (1) year, after which the respondent may seek reinstatement pursuant to *Admis.Disc.R. 23(4).* In assessing the appropriateness of this sanction we weigh several factors,[1] including the fact that this is an agreed disposition which is encouraged by *Admis.Disc.R. 23(11)(g).* The very nature of the misconduct, misuse and conversion of entrusted client funds, usually warrants our strictest scrutiny. Few other acts of misconduct impugn the integrity of the Bar or place the public more at risk than the misuse of client funds.[2] As mitigation, however, we consider the singleness of this misconduct in a twenty year career, the clients' agreement to the delayed receipt of funds, their complete satisfaction with the respondent, and the fact that the respondent paid over the funds without coercion or even a request from his clients. *Standard 4.12 of the American Bar Association Standards for Imposing Lawyer Sanctions* provides that suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or, as in this case, potential injury to a client. The conduct set out above falls into this class of cases. We find that the agreed sanction is appropriate under the circumstances of this case.

It is, therefore, ordered that the agreement tendered by the parties in this case is hereby approved. Accordingly, Stephan J. Lustina is suspended from the practice of law for a period of not less than one (1) year, beginning April 6, 1995, without automatic reinstatement.

Costs of this proceeding are assessed against the respondent.

---

1. This involves an analysis of the offense, the actual or potential injury, the respondent's state of mind, the duty of this Court to preserve the integrity of the profession, the risk to the public, and any mitigating or aggravating factors. *Matter of Frosch* (1994), Ind., 643 N.E.2d 902; *Matter of Clanin* (1993), Ind., 619 N.E.2d 269; *Matter of Stover–Pock* (1992), Ind., 604 N.E.2d 606.

2. *Matter of Frosch* (1994), Ind., 643 N.E.2d 902, 904.