**In the Matter of Kenneth C. KERN.**

**No. 49S00–9410–DI–1018.**

Supreme Court of Indiana.

Sept. 13, 1995.

Kenneth C. Kern, pro se.

Donald R. Lundberg, Executive Secretary, Indiana Supreme Court Disciplinary Commission, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

### DISCIPLINARY ACTION

PER CURIAM.

This case is before us on a *Statement of Circumstances and Conditional Agreement for Discipline* tendered pursuant to *Admission and Discipline Rule 23(11)(g)* by the Indiana Supreme Court Disciplinary Commission and Kenneth C. Kern, the respondent. The agreement arises out of a *Verified Complaint for Disciplinary Action* filed by the Commission, charging the respondent with certain violations of the *Rules of Professional Conduct for Attorneys at Law.* Having reviewed the tendered agreement, we find that it should be approved. The agreed facts are as follows:

The respondent is a member of the Bar of this state and is subject to this Court's disciplinary jurisdiction. During July of 1991, a

client asked the respondent to represent her in a personal injury action resulting from an automobile accident which had occurred on February 20, 1990. The client had already received a settlement offer of $15,000 from Farm Bureau Insurance Company ("Farm Bureau"), the insurer of the other party involved in the accident. That settlement offer included satisfaction of a subrogation claim of $4,956.86 from the client's own insurance carrier, State Farm Insurance Company ("State Farm"), for prepayment of some of the client's expenses. The client wanted the respondent to increase the settlement above the initial offer of $15,000.

At the end of December of 1991, the respondent negotiated a settlement with Farm Bureau of $25,000, which was the limit of the other party's coverage. Of that amount, $5,000 was for respondent's attorney fees, $4,750 was for State Farm's subrogation claim, and the client's portion was $15,250. On February 17, 1992, the respondent received the funds and disbursed $15,250 to the client. Farm Bureau had issued a separate check for $4,750 to pay for State Farm's subrogation claim. The respondent told his client that he would send the subrogation check to State Farm immediately.

After the settlement with Farm Bureau, the client contacted the respondent several times and asked whether he had sent the subrogation check to State Farm. Also, during mid July or early August, 1992, the client requested the respondent to assist her in collecting additional damages through her underinsured motorist coverage with State Farm. The respondent informed her that he had sent the subrogation check with a demand letter for recovery under the underinsured motorist provision of the client's own policy with State Farm. The respondent did not send the subrogation check to State Farm, nor did he send a demand letter until August 10, 1992. The respondent held on to the subrogation check for approximately six months. Meanwhile, in a letter to the client dated July 8, 1992, State Farm rejected her earlier request for additional damages under her underinsured coverage because proper notification procedures were not followed in the settlement of the claim with Farm Bureau.

■ The respondent is charged with (1) failing to abide by the client's decision to collect additional damages, in violation of *Professional Conduct Rule 1.2(a)*; (2) failing to keep his client reasonably informed about the status of the subrogation matter and failing to promptly comply with her reasonable requests for information regarding the status of the pending correspondence with State Farm, in violation of *Prof.Cond.R. 1.4(a)*; (3) failing to explain the nature of the underinsured coverage to the extent reasonably necessary to allow the client to make informed decisions, in violation of *Prof. Cond.R. 1.4(b)*; and (4) failing to act with reasonable diligence and promptness in sending the subrogation check to State Farm, in violation of *Prof.Cond.R. 1.3*. The foregoing findings, based on the parties' agreement, establish that the respondent engaged in the charged misconduct.

The parties further agree that certain mitigating factors exist in this case. The respondent's representation of this client was hampered by the client's maintaining her own contacts with the insurance companies. Throughout the course of the disciplinary investigation, the respondent was cooperative and remorseful regarding his failure to disburse promptly the subrogation check to State Farm. Most importantly, the respondent did not use the funds due State Farm for his own purposes, and the entire amount was eventually paid to the proper recipients.

■ For the misconduct set out above, the parties agree that a public reprimand is an appropriate disciplinary sanction. In assessing the appropriateness of the proposed sanction we weigh several factors. We consider the respondent's state of mind, actual or potential injury to the client, the duty of this Court to preserve the integrity of the profession, the risk to the public, and any mitigating or aggravating factors. *Matter of Lustina* (1995), Ind., 647 N.E.2d 317; *Matter of Frosch* (1994), Ind., 643 N.E.2d 902; *Matter of Clanin* (1993), Ind., 619 N.E.2d 269; *Matter of Stover–Pock* (1992), Ind., 604 N.E.2d 606.

The proposed sanction comports generally with *Standard 4.43* of the *American Bar Association Model Standards for Imposing Lawyer Sanctions* which provides that a reprimand is appropriate when a lawyer is negligent, does not act with reasonable diligence and causes injury or potential injury to a client. This respondent's neglectful conduct resulted in denial of the client's claim under her underinsured coverage. The findings also reveal acts of misconduct more disturbing than simple neglect. The six-month delay in transmitting the subrogation check is inordinate. More troubling is the respondent's promise to the client to transmit the subrogation check to State Farm immediately and his subsequent statement that he had sent the check and a demand letter, when in fact he did not do so until August 10, 1992. We also note that this respondent has received a prior disciplinary sanction for an unrelated incident of professional misconduct.[1] Prior discipline is one of the factors that may be considered in aggravation. *Standard 9.2* of the *American Bar Association Model Standards for Imposing Lawyer Sanctions.* These aggravating matters are weighed within the context of this agreed disposition which is encouraged by *Admis.Disc.R. 23(11)(g)* and is a factor considered in assessing proposed discipline. See *Lustina, supra.* In light of the agreed mitigating findings, the above aggravating factors, and in the interest of promoting settlements, we are persuaded that the agreed disciplinary sanction of a public reprimand is appropriate under the circumstances of this case. Accordingly, the agreement of the parties is approved. It is, therefore, ordered that the respondent, Kenneth C. Kern, is reprimanded and admonished for the misconduct set out above.

Costs of this proceeding are assessed against the respondent.

SELBY, J., not participating.

---

**1.** The respondent received a 60-day suspension with automatic reinstatement. *Matter of Kern* (1990), Ind., 555 N.E.2d 479.