**In the Matter of Kevin W. AULT.**

**No. 70S00–9608–DI–525.**

Supreme Court of Indiana.

May 26, 2000.

---

Kevin P. McGoff, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Dennis K. McKinney, Staff Attorney, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

## PER CURIAM.

By neglecting clients' legal affairs, purposefully submitting to courts proposed orders which did not accurately reflect the courts' rulings, and knowingly pursuing a cause of action in courts without jurisdiction to entertain the action, attorney Kevin W. Ault engaged in professional misconduct. We find today that his actions warrant suspension from the practice of law.

This case was heard by a duly-appointed hearing officer upon the Disciplinary Commission's four-count *Amended Verified Complaint for Disciplinary Action.* It is now before us upon that hearing officer's report, which finds misconduct as charged as to each of the four counts. Respondent Ault has petitioned this Court for review of those findings, pursuant to Ind.Admission and Discipline Rule 23, Section 15, thereby subjecting this matter to a *de novo* review. *Matter of Frosch,* 643 N.E.2d 902 (Ind. 1994). The Commission, while not challenging the hearing officer's findings, has submitted a *Memorandum on Sanction,* therein arguing that a suspension from the practice of law for a period of at least six months is appropriate.

Preliminarily, we note that the respondent's admission to the bar of this state in 1985 confers disciplinary jurisdiction here. Within the review context described above, we now find that, under Count I, in June 1993 a client being sued by his former employer for the recovery of medical expenses hired the respondent to defend the case, as well as to file a counterclaim for breach of contract and wrongful discharge (the "first lawsuit"). On July 19, 1993, the respondent answered the complaint and filed the counterclaim in Hamilton Superior Court, alleging (1) breach of implied contract as well as wrongful discharge in retaliation for the client's filing of a workers compensation claim, and seeking compensatory damages; and (2) wrongful discharge and punitive damages. The respondent also sought to have the employer's action removed from small claims court to the circuit court. The lawsuit was set for trial on January 10, 1994. In anticipation, the client's wife telephoned the respondent shortly before the trial to speak with him about it. The respondent informed her that the January 10 trial was not on his calendar, and the trial occurred without the respondent or his client present. The respondent did telephone the trial court that morning and advised a staff person that the trial was not on his calendar and that a conflict would make it impossible for him to be present. He also moved the court for dismissal without prejudice of the counterclaim. However, the motion was denied, and the employer prevailed with a default judgment against the client for $86.32 (plus court costs and interest) on its claims and the counterclaim. The day after the trial, the court received the respondent's motion for continuance.

The respondent informed his client that the employer had prevailed on one of its claims, but added that the client could pursue his counterclaims for wrongful termination and breach of contract in Bartholomew County, the client's county of residence. On May 18, 1994, the respondent filed on behalf of the client a lawsuit (the "second lawsuit") seeking punitive and compensatory damages from the employer under theories which were substantially identical to those forming the basis of the counterclaim in the earlier lawsuit. The employer, along with its formal answer, filed a counterclaim seeking attorney's fees and costs on the grounds that the claim

was barred by the doctrine of *res judicata* and that it was frivolous and groundless. The respondent failed to answer the counterclaim, and there was no further activity in the case until a pre-trial conference scheduled for November 2, 1995.

The client filed a request for investigation with the Commission on February 23, 1995. Subsequently, another attorney, who was working for the client on other matters, contacted the respondent to request from him the client's files. On May 18, 1995, the respondent transferred the file to the other attorney. On December 6, 1995, the respondent, alleging that the other attorney was representing the client in the second lawsuit, filed in the Bartholomew Superior Court a motion to withdraw as the client's counsel. The court took the matter under advisement pending new counsel filing an appearance; however, the other attorney did not represent the client in the lawsuit and did not file an appearance. On January 4, 1996, the employer's counsel advised the respondent to dismiss the lawsuit or face a default judgment on the counterclaim. On February 20, 1996, the employer's counsel served on the respondent a copy of his application for default judgment, and on March 19, 1996, a default judgment was entered in the case in favor of the employer on its counterclaim. That judgment after amendment amounted to $1,926.73.

Meanwhile, the client's other attorney filed a legal malpractice action against the respondent on January 9, 1996, alleging that the respondent failed timely to file an appeal of the client's Social Security claim, which led to a default judgment being entered against him in the first case. The respondent settled this claim for $1,000. While that action was pending, the respondent's attorney, whom he had hired to defend the malpractice suit, contacted both the client's other attorney and the employer's counsel about resolution of the second lawsuit. Although the client's other attorney never entered an appearance on behalf of the client in the second lawsuit, she did inform the respondent's attorney that she would recommend that the client sign a stipulation dismissing the second lawsuit, and even deliver the stipulation to the presiding judge so that the matter could be finalized. Despite those plans, the client's other attorney failed to obtain the client's signature on the stipulation of dismissal and have it delivered to the judge before entry of the default judgment.

By failing to attend the January 10, 1994 trial or to make timely arrangements to protect his client's interests in the first lawsuit, and by failing to answer the employer's counterclaim or otherwise defend the second lawsuit, the respondent violated Ind.Professional Conduct Rule 1.3, which requires lawyers to act with reasonable diligence and promptness while representing clients. The respondent argues that he made a prompt and diligent effort to make arrangements regarding the January 10 trial of the first lawsuit. However, those arrangements consisted primarily of a hasty last-minute phone call to the court advising that he would not be present. Had the respondent truly been diligent, he would have sought a continuance or other judicial relief before the time the trial was to begin. As for his failure to defend the second lawsuit, the respondent argues that he reasonably believed that his client had discharged him, given his client's grievance and the request from the client's other lawyer for the case file. However, the respondent was never formally notified of either his termination as counsel or that the other attorney had entered an appearance in the second lawsuit because neither event ever took place. The respondent would have us believe that the mere inference that he had been fired absolved him of his obligation, as attorney of record in the case, to protect diligently his client's legal interests. The fact is that the respondent remained the client's attorney of record right through the time the default judgment was entered against the client. He also failed, over a period of more than 18 months, to respond in any way to the

employer's counterclaim.[1] These actions violate Prof.Cond.R. 1.3.

As to the propriety of the respondent's filing the second lawsuit at all, the respondent argues that he relied upon Ind.Small Claims Rule 11(F), as well as *Johnson v. Anderson*, 590 N.E.2d 1146 (Ind.Ct.App. 1992), for the proposition that "a small claims judgment shall not be considered an adjudication of any fact at issue and 'res judicata' only applies to the amount." *Id.* at 1150.

The respondent's argument fails. Small Claims Rule 11(F) provides that "[a] judgment shall be res judicata only as to the amount involved in the particular action and shall not be considered an adjudication of any fact at issue in any other action or court." The rule, however, does not allow a party to relitigate a claim upon which judgment has been entered in a small claims case. *Cook v. Wozniak*, 500 N.E.2d 231, 233 (Ind.Ct.App.1986), *adopted and affirmed*, 513 N.E.2d 1222 (Ind.1987) ("[to permit] a plaintiff who recovered nothing in a small claims action to sue again on the same claim in another court would be 'sheer futility.'"). Instead, S.C.R. 11(F) was intended primarily to "limit issue preclusion where some fact in the small claim action is at issue in another case," and to "also apply to claim preclusion to the extent that claim preclusion would ordinarily bar all matters which might have been litigated but were not actually litigated in the small claims action."[2] *Cook* at 233. In his initial counterclaim in the small claims action, the respondent sought compensatory damages for breach of implied contract and punitive damages for wrongful discharge. After suffering an adverse judgment in the small claims court on those claims, the respondent sought the very same relief in the Bartholomew Superior Court. As such, the respondent's second lawsuit, being *res judicata* because it was the exact claim litigated to conclusion in the small claims court, was frivolous and nonmeritorious and thus violated Prof.Cond.R. 3.1.[3]

Under Count II, we find that the respondent represented the wife in a dissolution action pending in Rush Circuit Court. Final hearing was conducted on October 11, 1995, at the conclusion of which the respondent was ordered to prepare a proposed decree in accordance with court instructions. Shortly thereafter, counsel for the husband requested that the respondent send a copy of the decree draft to him for inspection. On November 22, 1995, the respondent submitted the proposed decree directly to the clerk's office without providing a copy to the other attorney. After the clerk's office provided the other attorney with a copy, the attorney noticed that it was not accurate and asked that it not be signed. One of the errors he noticed was that the amount of health care expense to be borne solely by the custodial parent (the respondent's client) under the Indiana Child Support Guidelines should have been $390, and he corrected the proposed decree to reflect that amount. The attorney then sent a corrected version of the proposed decree to the respondent. The respondent added that correction and

---

1. The respondent's obligation diligently to represent his client continued despite the apparent miscommunication between the respondent, his attorney, and the client's other attorney regarding the stipulation of dismissal of the second lawsuit.

2. Thus, had the respondent not filed a counterclaim in the small claims action, he could have filed it as a separate lawsuit and S.C.R. 11(F) would not have operated as a bar to those claims that could have been but which were not litigated in the small claims case. The respondent may have recognized this problem early on, when he sought to have his counterclaim dismissed without prejudice.

3. The present set of facts may be contrasted to those at issue in the case the respondent relies upon, *Johnson v. Anderson*, 590 N.E.2d 1146 (Ind.Ct.App.1992), where the Court of Appeals found that S.C.R. 11(F) prohibited the application of *res judicata* where, after an adverse small claims judgment, a party later sued the prevailing party on a wholly distinct claim under the Deceptive Consumer Sales Act.

returned a revised copy to the other attorney, but the other attorney returned it once more because the respondent had omitted a provision covering notification of the spouse in medical emergencies. The respondent drafted a third proposed decree which included the notification provision but which also reduced the amount of uninsured medical expense to be borne by the respondent's client from $390 to $282. The respondent's note accompanying the third proposed decree stated only, "Please find enclosed a copy of the Decree of Dissolution with some revisions. If you have any questions, please give me a call." The next day, the other attorney filed a motion asking that the court permit him to submit a proposed final decree and to award him attorney fees for this task. The court granted the motion and later denied the respondent's motion to reconsider it. The final decree entered by the court was the one prepared by the other attorney. Later, the court ordered the respondent to pay the other attorney's expenses caused by the respondent's delay in submitting an appropriate proposed decree.

Indiana Professional Conduct Rule 3.2 provides that lawyers shall expedite litigation consistent with the interests of their clients. By failing to ensure that an appropriate proposed decree was timely filed, the respondent violated the rule. The respondent argues that any delay was attributable to what he characterizes as a "reasonable" dispute between the respondent and opposing counsel over the uninsured medical expenses. While it is true that several drafts were exchanged, it is also true that the reason for the final exchange and ultimate request by opposing counsel that he be allowed to prepare the decree was the respondent's surreptitious reduction of the amount of uninsured medical expense his client was obligated to bear. Reasonable disputes do not spring from clandestine changes made to already-agreed to terms.

Professional Conduct Rule 8.4(d) provides that lawyers shall not engage in conduct that is prejudicial to the administration of justice. By seeking to gain an unfair advantage for his client by having, through the use of unreasonable delay, the court sign a decree contrary to the court's ruling, and by wrongfully modifying the terms of the proposed decree without advising opposing counsel, the respondent violated the rule. Although the respondent characterizes the exchanges of the proposed decrees as a reasonable dispute between lawyers, his tactics were unreasonable. He simply changed the amount of uninsured medical expense to be borne by his client without notifying opposing counsel of such change. As such, his actions were prejudicial to the administration of justice.

Pursuant to Count III, we now find that on · November 12, 1993, the respondent filed in Rush Circuit Court a motion to modify a divorce decree and to emancipate a child on behalf of the noncustodial parent. During hearing on the petition on December 17, 1993, the court heard evidence that the child had taken one semester off from college, but that she was enrolled to reenter college in the fall of 1994. The court's usual practice was to not enter an order of emancipation in cases where there was a basis to believe that the child was going to continue her education. Instead, the court would abate support until evidence was offered to demonstrate that the child had returned to school, thereby activating the custodial parent's right to seek support from the noncustodial parent. Evidence at disciplinary hearing established that the court's usual practice was to issue a ruling from the bench at the conclusion of the hearing directing the appropriate attorney to prepare an order consistent with the ruling. There was nothing in the court's notes from the modification hearing to indicate that the noncustodial parent was to pay for educational expenses of the child. After the hearing, the respondent submitted a proposed order on emancipation, which proposed an entry date of December 1993.

Two post-it notes were attached to the court's file copy of the proposed order. The first read, "Ault's office to bring revised order"; the second read, "5–7–94 . . . Told [court personnel] we still have not gotten new order." The judge in the trial court case testified at disciplinary hearing that, after reviewing these notes, she believed that the respondent had been directed to prepare an order conforming with her bench ruling, but that the proposed order he submitted did not abate support as ordered by the court, but instead unconditionally emancipated the child. The court several times directed the respondent to change the proposed order. Rather than comply, the respondent waited two years before contacting the court to ask why the respondent's original proposed order had not been entered. By that time, the judge no longer remembered why the original erroneous order had been rejected. On February 22, 1996, the court entered an order granting time for objections, giving the custodial parent ten days to object to entry of the two-year old proposed order. The custodial parent was proceeding *pro se* and did not respond, not fully understanding that an order of emancipation would cut off the noncustodial parent's support obligation if the child returned to school. The judge signed the proposed order on March 4, 1996.

The respondent would have us believe that there was nothing in the respondent's proposed order that did not accurately reflect the judge's ruling from the bench. However, the respondent's first proposed order was rejected precisely because, in the judge's opinion, it did not reflect the abatement provisions as articulated by the judge at hearing. At hearing of this disciplinary case, the judge testified that she believed, based on her usual custom and practice, that she directed the respondent to draft a proposed order abating support but not emancipating the child. The respondent's submission some two years later, despite the directives, did just the opposite. Accordingly, we find that the respondent's submission of an order which did not accurately reflect the trial court's ruling on the modification and his failure to comply with the trial court's order to submit a proposed order which accurately reflected the ruling from the bench is conduct prejudicial to the administration of justice, in violation of Prof.Cond.R. 8.4(d).

Pursuant to Count IV, we now find that a Florida resident drowned in a Florida lake in 1994. The Florida lake was situated on property owned by a New Jersey partnership. The victim's father, an Indiana resident, consulted with the respondent about pursuing a wrongful death claim against the partnership in an Indiana court. The father informed the respondent that, if at all possible, he wanted the case to remain in Indiana.

The respondent opened an estate for the victim in Franklin County in November 1995, and the father was appointed personal representative. The respondent acted as attorney for the estate. Between late 1994 and June 1996, the father periodically asked the respondent about the status of the contemplated wrongful death action. The respondent informed him that he had investigators working on it. In June 1996, the father told the respondent that he would be fired unless he demonstrated some tangible activity in the case.

On June 22, 1996, the respondent filed a wrongful death action against the partnership in Franklin Circuit Court. The partnership's sole asset was the real estate in Florida. It did not engage in a persistent course of conduct, or derive substantial revenue or benefit from goods, materials, or services used, consumed or rendered in Indiana. The partnership moved to dismiss the case, arguing that the Indiana court lacked jurisdiction over a partnership that did no business in Indiana and which had no other connection with the state. The trial court granted the motion to dismiss on August 15, 1996. The respondent filed a timely motion to correct errors and a motion to amend the complaint, therein alleging that the partner-

ship "regularly does or solicits business in the state of Indiana, or engages in a persistent course of conduct, and derives substantial revenue or benefit from goods, materials, or services used, consumed or rendered in Indiana, all pursuant to Indiana Trial Rule 4.4(A)(3)."

Although the court granted the respondent's motion to amend the complaint, the respondent never filed an amended complaint. Instead, he sought to have the case "transferred" to federal district court, to be filed retroactively to the date of the state court filing. An order transferring the proceedings was issued October 10, 1996, retroactive to June 24, 1996. The respondent then filed a wrongful death action in the federal court. The partnership again moved to dismiss, arguing that the complaint failed to plead facts establishing the federal court's jurisdiction and stating that the Indiana federal district court lacked jurisdiction over a non-Indiana defendant for an accident that occurred in Florida. Rather than tell his client that the partnership sought to dismiss the case, the respondent told him that the partnership sought to have the case transferred to Florida.

The respondent was not aware of any evidence that the partnership had ever done or solicited business in Indiana or that it engaged in a persistent course of conduct, or derived substantial revenue or benefit from goods, materials, or services used, consumed or rendered in Indiana, nor did the respondent ever try to learn whether the allegations in the motion to amend were true. He conducted no discovery at all in either the state or federal case to learn if the partnership had any connection at all with Indiana. The respondent withdrew from the federal case on December 19, 1996, and the federal court dismissed the case without prejudice on jurisdictional grounds on January 9, 1997.

By failing to act with reasonable diligence and promptness in filing a wrongful death action in a court of proper jurisdic-

tion, the respondent violated Prof.Cond.R. 1.3. By filing the wrongful death claim in both a state and federal court with no colorable claim that either court had jurisdiction over the matter, the respondent violated Prof.Cond.R. 3.1 by bringing a nonmeritorious claim. By seeking an order from a state court (which clearly did not have jurisdiction over the defendants) which purported to direct the federal court (which also clearly did not have jurisdiction over the defendants) to accept jurisdiction of the case and retroactively to docket the case, the respondent engaged in conduct prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d).

Professional Conduct Rule 1.4(b) provides that a lawyer shall explain a matter to his client to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. By failing to advise his client as to the law regarding appropriate jurisdiction for filing a wrongful death suit, by failing to keep his client apprised of the status of the state and federal claims, and by failing to inform his client that the state court had dismissed the claim, the respondent violated the rule. Professional Conduct Rule 3.3 provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal. By in effect pleading that the partnership had contacts with Indiana sufficient to confer jurisdiction on the Franklin Circuit Court without any evidence at all to support that contention, the respondent violated the rule.

Having found misconduct, we must now decide upon an appropriate sanction. In so doing, the factors we examine include aggravating and mitigating circumstances. In mitigation, we note that the respondent has never before been disciplined by this Court. In aggravation, we note the respondent's patterns of misconduct, exemplified, for example, by his willingness to resort to frivolous litigation and by his inability diligently to prosecute or defend legal matters clients hired him to handle. Further, by altering proposed orders with-

out informing opposing counsel in one case and waiting two years before attempting to induce the judge sign an order which did not reflect the judge's oral ruling in another, the respondent engaged in deliberately deceptive behavior. In all, we find that the respondent's actions do not represent a single isolated mistake or lapse in professional judgment, but instead reflect a tendency to resort to inappropriate tactics to either gain an unfair advantage or cover some professional lapse. Because of that, as well at the relative lack of mitigating circumstances, we conclude that his misconduct warrants a significant period of suspension.

It is, therefore, ordered that the respondent, Kevin W. Ault, be suspended from the practice of law for a period of ninety (90) days, beginning July 3, 2000. At the conclusion of that period, he shall be automatically reinstated to the practice of law in this state.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerks of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.