**In the Matter of Jerry T. JARRETT.**

**No. 45S00–9104–DI–325.**

Supreme Court of Indiana.

Oct. 30, 1992.

**132**

Jerry T. Jarrett, pro se.

Jeffrey D. Todd, Indiana Supreme Court, Disciplinary Com'n, Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

## PER CURIAM

The Respondent, Jerry T. Jarrett, was charged in a seven count complaint for disciplinary action with engaging in professional misconduct. The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, Section 11(b), has tendered his findings of fact, conclusions and recommendation, and the case is now before us for final determination. Neither party has challenged the findings, but the Commission has petitioned for review of the recommended sanction.

When, as in this case, the findings are unchallenged, they are accepted, with the understanding that the ultimate determination and assessment of sanction rests with this Court. The Commission's petition will be addressed within the scope of this review process.

Accordingly, we find that the Respondent is an attorney who was admitted to the practice of law in Indiana on May 26, 1981.

Count I. In October of 1988, Floyd Lewis retained Respondent to pursue a wrongful termination claim against Eli Lilly and Company. Lewis paid Respondent $1,500 as a retainer. Respondent filed suit in federal court but thereafter failed to pursue the claim. He failed to exchange witness and exhibit lists as ordered by a pretrial order and twice failed to appear for a scheduled deposition. The Respondent also failed to attend a hearing on defendant's request for sanctions, and the court granted the motion for sanctions. On August 21, 1989, because of Respondent's inaction, because no other pleadings or evidence had been presented, and because Respondent had ignored virtually every court order, the case was dismissed. Ultimately Respondent paid the imposed sanction.

In April of 1990, Lewis was finally able to reach Respondent who informed Lewis that Respondent had a scheduled meeting on April 12, 1990, with officials from Eli Lilly and Co. to discuss settlement. When Lewis failed to hear from Respondent regarding the purported settlement conference, he telephoned the court sometime in November, 1990, only to discover that his complaint had been dismissed over one year earlier.

Lewis filed a malpractice action against the Respondent at which Respondent failed to appear, and a default judgment of 2.2 million dollars was entered against Respondent.

During the hearing before the Hearing Officer, Respondent asserted that his inaction was due to a misunderstanding regarding fees and that he felt that the $1,500 retainer was insufficient for the substantial effort necessary in the case. Respondent did demand an additional $1,000 in a letter dated March 23, 1989, but he made no effort to withdraw or to indicate to Lewis that alternative arrangements should be made.

Respondent's entire conduct in handling Lewis's case violates some of the basic precepts of professional standards. He failed to abide by his client's decisions concerning the objectives of the representation, and he failed to act with reasonable diligence and promptness, in violation of Prof.Cond.R. 1.2(a) and 1.3. He failed to address the client's reasonable requests for information or to provide the client with sufficient information to enable him to make an informed decision, in violation of

Prof.Cond.R. 1.4. He charged a clearly unreasonable fee of $1,500 in light of the fact that he rendered virtually no service in this matter, in violation of Prof.Cond.R. 1.5. He failed to make reasonable efforts to expedite the litigation in violation of Prof.Cond.R. 3.2. He knowingly disobeyed the rules of a tribunal, in violation of Prof.Cond.R. 3.4(c). He engaged in conduct involving dishonesty, deceit and misrepresentation, in violation of Prof.Cond.R. 8.4(c) and conduct which is prejudicial to the administration of justice, in violation of Prof.Cond.R. 8.4(d).

Count II. On November 4, 1987, Respondent was retained to seek the return of an earnest money deposit in a real estate transaction. Respondent received $255 as retainer to conduct prelitigation negotiations. In the event suit became necessary, Respondent indicated that an additional $200 would be due for a total of $400 plus a filing fee of $55. Negotiations were unsuccessful, and the Respondent led the client to believe that suit had been filed and trial date had been set. This caused the client to drive from Michigan to Indiana to testify at the trial. In fact, no suit had been filed. The client tried repeatedly to contact the Respondent to no avail, and, after two years had elapsed, filed suit against Respondent seeking $935 in damages. Respondent failed to appear, and a default judgment was entered against him. At subsequent hearings on proceedings supplemental, Respondent promised to pay but failed to do so. Eventually, a bench warrant was issued, bond was posted and the bond proceeds were used to satisfy the judgment. The Respondent claimed that he had refused to file suit prior to receiving the additional $200. However, it is clear that despite the client's many efforts in this regard, the Respondent failed to have even minimal communication with his client.

The foregoing findings establish that Respondent failed to provide competent representation and failed to act with reasonable diligence and promptness, thereby violating Prof.Cond.R. 1.1 and 1.3. He failed to keep his client reasonably informed and failed to comply with reasonable requests for information by ignoring the client's many inquiries, in violation of Prof.Cond.R. 1.4(a). His conduct surrounding this representation involved dishonesty, fraud, deceit and misrepresentation, in violation of Prof. Cond.R. 8.4(c).

Count III. On July 28, 1987, the Respondent was retained to represent a client in a dissolution of marriage action. Pursuant to a fee agreement, Respondent was to be compensated at a rate of $65 per hour. The Respondent filed the petition for dissolution in July, 1988. Under the terms of a provisional order, $8,000 of the husband's assets were placed in escrow with the Respondent to be used by Respondent to pay the outstanding medical bills of his client, court costs and his attorney fees. The balance was to be returned to the client.

After the entry of the final decree of dissolution, Respondent took $3,000 from the escrowed money for himself as attorney fees. The client, having become concerned about her unpaid medical bills, confronted Respondent who advised her that he was attempting to negotiate further payment from various medical insurance policies. In fact, the Respondent never paid the medical bills and commingled the $8,000 with his personal assets. He attempted to appease his client by tendering to her nine checks written on his trust account, all made payable to various health care providers, but directed that she not forward the checks until authorized by him. In reality, Respondent did not have sufficient funds in his account to cover the payment of these checks. Eventually, Respondent tendered to his client a check for $3,223.60 for payment of a delinquent hospital bill.

During March of 1988, the client repeatedly attempted to reach Respondent to inquire about the bills and balance due her, without any success. Shortly thereafter, Respondent sent his client a statement for services rendered and expenses incurred reflecting a balance due to Respondent, which he extracted from the $8,000.

The client retained new counsel, who, on March 21, 1988, advised Respondent by let-

ter that the client found the fees to be unreasonable, that she demanded an accounting and that she demanded return of funds due her. Respondent again ignored the request, and the client filed suit. Thereafter, Respondent negotiated a settlement that drastically reduced his fees, but he misrepresented to the new attorney that he had mailed the settlement check. After threat of further legal action, Respondent tendered a check which was found to be nonnegotiable because of insufficient funds. Eventually, the settlement was paid.

This set of events present a disturbing scenario. This was a simple dissolution with no novel issues, child custody or serious pension evaluations and was uncontested by an opponent who appeared *pro se*. Under these circumstances, Respondent's claimed fee was clearly unreasonable and cannot excuse his failure to return client's funds. Respondent's actions indicate that, having once obtained control of the $8,000, he did everything possible to retain these funds for his own use. Respondent's misuse of entrusted funds and his blatant refusal to safeguard and return such funds to the rightful owner resulted in unnecessary expense and hardship on the unsuspecting client. We conclude that Respondent engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of Prof.Cond.R. 8.4(c); he failed to act with reasonable diligence and promptness in representing his client's interest and paying her medical bills, in violation of Prof.Cond.R. 1.3; and he charged an unreasonable fee, in violation of Prof. Cond.R. 1.5.

Count IV. During 1984 Respondent was retained to file a civil rights suit arising out of a public disturbance in which the client had been arrested for disorderly conduct. Respondent agreed to pursue the action for a one-third contingency fee and a retainer of $500. Respondent filed the suit, and the case was later settled for $5,000. In January, 1988, Respondent accepted the $5,000 settlement on behalf of his client. He retained $1,000 as his fee and placed the remaining $4,000 in his escrow account.

After the settlement had been reached, it was agreed that Respondent should take steps to set aside the client's criminal conviction through post conviction relief remedies. Respondent failed to do this despite frequent requests for status reports from the client. Respondent failed to return any of the $4,000 held in escrow and claimed that the funds were exhausted as reimbursement for expenses incurred in the civil rights suit.

These findings establish that Respondent once again obtained control of client's funds and simply refused to hand them over to the rightful owner. Respondent failed to furnish competent representation by failing to file the necessary petition to set aside the criminal conviction and failed to promptly comply with reasonable request for information necessary to permit his client to make an informed decision, in violation of Prof.Cond.R. 1.1 and 1.4. He failed to provide any accounting of the funds received on behalf of the client, failed to keep the allegedly disputed funds separate, and failed to deliver to the client funds to which the client was entitled, in violation of Prof.Cond.R. 1.15(b) and (c). The foregoing findings indicate Respondent's alarming propensity for appropriating client's funds. Respondent took the settlement funds, refused to return them and simply converted the same. He committed a criminal act that reflects adversely on his fitness as a lawyer, in violation of Prof.Cond.R. 8.4(b). Such conduct involved dishonesty, fraud, deceit and misrepresentation and was prejudicial to the administration of justice, in violation of Prof. Cond.R. 8.4(c) and (d).

Count V. In 1984, the Respondent undertook to represent a criminal defendant charged with murder. The Respondent agreed to handle the defense for a total fee of $5,000 which fee he deemed low but one that he would accept because he desired to establish himself as a defense counsel in serious felony cases. The fee agreement was not reduced to writing. By the time of trial, the Respondent had been paid only $2,000. The client was convicted of murder and sentenced accordingly in November, 1984. At the sentencing hearing, the de-

fendant indicated to the trial court his desire to perfect an appeal and the fact that Respondent would be handling such appeal. The Defendant and the trial court fully expected Respondent to prepare, file, and argue the Motion to Correct Error and to perfect the appeal. As a result of the client's failure to pay the balance of fees owed to Respondent Jarrett, Respondent had no intention of advancing the cost of the transcript or performing further services for this client. However, Respondent stood silent and did nothing to refute the client's stated expectations. Respondent failed to advise his client of his position and failed to advise the client to seek the appointment of a public defender, although he did request the preparation of a trial transcript.

After the time had expired for filing a Motion to Correct Error and perfecting an appeal, the client wrote several letters to Respondent inquiring of the status of his appeal, but he received no response.

As a result of Respondent's inaction and failure to advise his client that he would not and did not perfect an appeal, the client lost his appellate remedies.

We conclude from the foregoing findings that the Respondent failed to provide competent representation insofar as he failed to either perfect an appeal or advise his client that he had no intention of doing so, in violation of Prof.Cond.R. 1.1; he failed to act with reasonable diligence and promptness, in violation of Prof.Cond.R. 1.3; and he engaged in conduct that is prejudicial to the administration of justice, in violation of Prof.Cond.R. 8.4(d).

Count VI. The Commission presented no evidence relative to this count, and, accordingly, we find that it should be dismissed.

Count VII. In March of 1990, Kimberlee Bailey retained Respondent to file a petition for dissolution of her marriage and paid him $275. After approximately 60 days, Bailey inquired as to her divorce and was advised to appear on November 15, 1990, at the Lake County Government Center where the marriage would be "officially dissolved." Bailey and a friend appeared as instructed and were greeted by Respon-

dent who advised them that "we will wait outside the courtroom for ten minutes and if Mr. Bailey doesn't show then your marriage will be officially dissolved."

Although Bailey was assured by Respondent that she would receive a decree in the mail in 7 to 10 days, it never arrived, and Bailey later learned that Respondent had never filed the petition for dissolution.

We conclude from the foregoing findings that Respondent failed to provide competent representation and failed to act with reasonable diligence and promptness in violation of Prof.Cond.R. 1.1 and 1.3. Further, Respondent violated Prof.Cond.R. 8.4(c) and (d) as his conduct involved dishonesty, fraud, deceit and misrepresentation and was prejudicial to the administration of justice.

■ Having determined that Respondent violated the *Rules of Professional Conduct* on numerous occasions, it is now this Court's responsibility to assess an appropriate sanction. This analysis involves an examination of the nature and entire course of Respondent's actions, any consequences that flow from the misconduct, the state of mind of the Respondent, the duty of this Court to preserve the integrity of the profession, the risk to the public and any exacerbating or mitigating factors. *In re Reed* (1992) Ind., 599 N.E.2d 601; *In re Wells* (1991), Ind., 572 N.E.2d 1290; *In re Smith* (1991), Ind., 572 N.E.2d 1280; *In re Coleman* (1991), Ind., 569 N.E.2d 631.

■ After a careful review of the allegations and findings in this case, we concur with the Hearing Officer's summary observations that in virtually every instance set out above, the Respondent demanded a retainer fee, which he set and received, but thereafter performed only minimally, if at all, to the great detriment of his clients. In almost every case Respondent explained his inaction to be the result of his expectation of additional fees, which expectation he did not clearly communicate to his clients. The ultimate result of these actions was that his clients suffered great inconvenience and in more than one instance suffered the foreclosure of their

legal remedies. But most disconcerting is Respondent's recalcitrant refusal to surrender client's funds and his deceitful treatment of his clients. We also note that the Respondent engaged in professional misconduct on a prior occasion and was reprimanded accordingly.[1] The pattern of neglect and deception set out in the foregoing findings render Respondent unfit to be entrusted with the interests of others. Accordingly, we conclude that the Respondent should be suspended from the practice of law for a lengthy period of time at the conclusion of which he may seek reinstatement pursuant to the provisions set out in Admission and Discipline Rule 23, Section 4. It is, therefore, ordered that Jerry T. Jarrett is suspended from the practice of law for a period of three (3) years, beginning November 27, 1992.

Costs of this proceeding are assessed against the Respondent.

1. *In the Matter of Jerry T. Jarrett,* Case Number 45S00–8702–DI–203, "Order Approving Conditional Agreement and Imposing a Private Repri-

mand," (Indiana Supreme Court, January 7, 1988).