**In the Matter of Jerry T. JARRETT.**

**No. 45S00–9308–DI–873.**

Supreme Court of Indiana.

Nov. 8, 1995.

No appearance for Respondent.

Donald Lundberg, Executive Secretary, David B. Hughes, Staff Attorney, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

### DISCIPLINARY ACTION

PER CURIAM.

In a *Verified Complaint for Disciplinary Action,* the Indiana Supreme Court Disciplinary Commission charged Jerry T. Jarrett with four counts of professional misconduct. A hearing officer appointed pursuant to *Admission and Discipline Rule 23* conducted a hearing and tendered to this court his findings of fact and conclusions of law. The respondent failed to appear at said hearing, in person or by counsel, and neither party petitioned for review of the hearing officer's report. When the hearing officer's report is not challenged by the parties, we accept and adopt the findings but reserve final judgment as to misconduct and sanction. *Matter of Kingma–Piper* (1994), Ind., 640 N.E.2d 1060; *Matter of Gerde* (1994), Ind., 634 N.E.2d 494; *Matter of Kristoff* (1993), Ind., 611 N.E.2d 116.

Accordingly, we find that the respondent is an attorney, not in good standing, who was

admitted to the practice of law in Indiana on May 26, 1981. He is under a disciplinary suspension for a period of not less than three years, which began on December 27, 1992. *Matter of Jarrett* (1992), Ind., 602 N.E.2d 131. In an earlier disciplinary action dating back to 1988, the respondent had received a private reprimand pursuant to a conditional agreement.

Under Count I of this complaint we find that in July of 1986, a client retained the respondent to bring a civil action against certain defendants for damages suffered by the client in an altercation in Hammond, Indiana. The respondent accepted the case, and the client paid him $500 in cash as a retainer. The client heard virtually nothing from the respondent for the next two or three years. Initially the client was not concerned because he believed that his case would take approximately five years to come to trial. Thereafter, however, the client experienced a great deal of difficulty in contacting the respondent. On some occasions, a secretary answered the telephone, advising the client that the respondent was not in. The respondent did nothing appreciable to advance the client's claim which lapsed due to the running of the statute of limitations. The respondent never refunded any of the retainer fee.

The foregoing findings establish clearly and convincingly that the respondent failed to maintain communication with his client, in violation of *Prof.Cond.Rules 1.4(a)* [1] and *(b)* [2]. He did not abide by the client's decision concerning the objectives of the representation, in violation of *Prof.Cond.R. 1.2(a)* [3]. By ignoring his responsibilities towards his client and failing to preserve the client's cause of action before the running of the statute of limitations, the respondent engaged in conduct which is prejudicial to the administration of justice, in violation of *Prof. Cond.R. 8.4(d)* [4]. By failing to refund the unearned fees, he engaged in criminal conduct, namely conversion, in violation of *Prof. Cond.R. 8.4(b)* [5].

As to Count II we find that a client retained the respondent to appeal a personal injury matter which the client had lost on October 29, 1987, following a jury trial. The client had filed a *pro se Motion to Correct Error* on December 28, 1987. The respondent agreed to take the case, and, on February 27, 1988, the client paid him the requested $1,000. After being retained, the respondent no longer communicated with the client despite the client's many telephone calls, both to the respondent's office and to his home. The respondent failed to return the client's calls or to answer her messages.

The respondent did nothing to initiate the appeal or to earn the fee which had been paid to him. He did not return the fee despite messages from the client requesting return of the money. Eventually, the client brought an action in small claims court and was able to collect $300 from the respondent.

It is clear from these findings that the respondent failed to maintain communication with this client; he failed to abide by the client's decisions in pursuing the objective of the representation; he ignored his responsibilities and engaged in conduct prejudicial to the administration of justice; and he failed to refund the unearned fee, thereby engaging in criminal conduct, conversion. This conduct, as his conduct in Count I, violates *Prof. Cond.Rules 1.4(a)* and *(b)*, *1.2(a)*, *8.4(d)* and *8.4(b)*.

1. *Prof.Cond.R. 1.4(a)* states that "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

2. *Prof.Cond.R. 1.4(b)* states that "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. *Prof.Cond.R. 1.2(a)* provides generally that a lawyer shall abide by a client's decisions concerning the objectives of representation.

4. *Prof.Cond.R. 8.4(d)* provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

5. *Prof.Cond.R. 8.4(b)* provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

Relative to the charges under Count III we find that in July of 1991 a grandmother hired the respondent to seek a sentence modification on behalf of her incarcerated grandson. The total agreed fee was $1,500. The grandmother paid $1,000 in cash to the respondent. After hearing nothing from the respondent and having her requests for information go unanswered, the client made numerous requests for refund of the $1,000. Eventually, the client met with the respondent and requested a refund. The respondent succeed in persuading the client to permit him to continue. Thereafter, the client resumed her attempts to contact the respondent with demands for return of the fee. The respondent failed to respond, return the fee or give any reason for retaining the money. The grandson was eventually released from prison after serving his full sentence. The respondent never filed the petition for sentence modification for which he was hired.

These findings clearly and convincingly establish that the respondent once again failed to initiate the requested representation, in violation of *Prof.Cond.R. 1.2(a);* he failed to communicate with his client, in violation of *Prof.Cond.R. 1.4(a);* he failed to investigate the possibility of a sentence reduction, thereby violating *Prof.Cond.R. 1.3* [6]; and he failed to refund any advance payment of a fee that had not been earned, in violation of *Prof. Cond.R. 1.16(d)* [7].

As to Count IV we find that on December 19, 1991, a mother retained the respondent to represent her son in two criminal matters. She paid the respondent a cash retainer of $2,000. Her son had been charged in two separate felony cases in the Lake Superior Court. In one of the cases, the court had set bail at $25,000; in the other case, bail was set at $30,000 and later reduced to $10,000. The mother had posted cash bonds of $2,500 and $1,000. While released on bond, the son was arrested and incarcerated in Cook County, Illinois, on separate charges.

Without any knowledge or approval by the client or the defendant, the respondent, on June 26, 1992, filed motions for the release of bond in the two Lake County cases. The trial court granted the motions, causing two checks to be issued jointly to the respondent and the defendant in the amounts of $782 and $2,282. The court later amended the refund amounts, and two additional checks, each for $50, were issued jointly to the respondent and the defendant.

On October 23, 1992, the respondent deposited the four bond refund checks into the respondent's office account. The checks bore the endorsements of both, the respondent and the defendant. The defendant had neither endorsed the checks nor authorized the respondent to do so. As noted above, the respondent was suspended from the practice of law beginning November 27, 1992, for earlier unrelated misconduct. Because of the suspension, the respondent represented this particular defendant through November 13, 1992. Thereafter, the Lake Superior Court appointed a public defender to represent the defendant, and this attorney sought the return of the bond refund money. On July 20, 1993, the day before a scheduled hearing on the bond refund was to take place, the respondent wrote a check for $3,064 on respondent's personal account to the defendant and his mother. The check was honored.

The foregoing findings establish clearly and conclusively that the respondent once again violated *Prof.Cond.R. 8.4(b)* by engaging in a criminal act, conversion, which reflects adversely on his honesty, trustworthiness and fitness as a lawyer. By failing to notify the defendant that he had received the bond refund checks from the court and by failing to promptly deliver the proper refund to the defendant, the respondent violated *Prof.Cond.R. 1.15(b)* [8]. By failing to hold the

---

6. *Prof.Cond.R. 1.3* states that "A lawyer shall act with reasonable diligence and promptness in representing a client."

7. *Prof.Cond.R. 1.16(d)* provides that upon termination of representation, a lawyer shall refund any advance payment of fee that has not been earned.

8. *Prof.Cond.R. 1.15(b)* provides that, upon receiving funds or other property in which the client or a third person has an interest, a lawyer shall promptly notify the client or third person.

defendant's refund checks separate from the respondent's property, he violated *Prof. Cond.R. 1.15(a)*.[9]

It is now our duty to determine an appropriate discipline for the professional misconduct set out above. This involves an examination of the respondent's state of mind, the duty violated, actual or potential injury to the client, the duty of this court to preserve the integrity of the profession, the risk to the public, and any mitigating or aggravating factors. *Matter of Lustina* (1995), Ind., 647 N.E.2d 317; *Matter of Frosch* (1994), Ind., 643 N.E.2d 902; *Matter of Clanin* (1993), Ind., 619 N.E.2d 269. The respondent's conduct presents an alarming pattern of dereliction of duty, abandonment of clients' interests, often resulting in irreparable damage, and a blatant disregard of professional responsibilities. His conversion of unearned fees and fraudulent redemption of bond funds raise this misconduct to the level of intentional criminal activity. We are also mindful of the conspicuous lack of mitigating factors and the existence of weighty aggravating circumstances.[10] The fact that much of the misconduct in this case occurred while the respondent was being prosecuted for the very same sort of misconduct [11] convinces us that the respondent is unable to heed intermediate measures of discipline and that the ultimate sanction of disbarment is warranted. Accordingly, we find that the respondent should be disbarred. It is, therefore, ordered that Jerry T. Jarrett is hereby disbarred.

Costs of this proceeding are assessed against the respondent.

DeBRULER, J., dissents and would extend present suspension for one year.

---

**9.** *Prof.Cond.R. 1.15(a)* provides that a lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

**10.** *Standard 4.1* of the *American Bar Association Model Standards for Imposing Lawyer Sanctions* provides that disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

**11.** *Matter of Jarrett, supra.*