**In the Matter of J. Scott BARRATT.**

No. 49S00–9406–DI–575.

Supreme Court of Indiana.

April 10, 1996.

J. Scott Barratt, Indianapolis, IN, Jon R. Pactor, Indianapolis, IN, for Respondent.

Donald Lundberg, Executive Secretary, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The respondent, J. Scott Barratt, was charged in a two count complaint for disciplinary action with several violations of the *Rules of Professional Conduct for Attorneys at Law.* Pursuant to *Admission and Discipline Rule 23, Section 14(f),* the hearing officer heard the case and tendered his report on findings of fact and conclusions of law but declined to recommend a sanction. The respondent petitioned for review, and both parties set forth their respective arguments. The review process in disciplinary matters is a *de novo* examination of all matters presented. The hearing officer's report receives emphasis due to his or her unique opportunity for direct observation of witnesses, but this Court remains the ultimate fact-finder and arbiter of misconduct and sanction. *Matter of Geisler,* 614 N.E.2d 939 (Ind.1993); *Matter of Smith,* 579 N.E.2d 450 (Ind.1991); *Matter of Gemmer,* 566 N.E.2d

528 (Ind.1991). The respondent's contentions will be addressed within the context of this review process.

As a preliminary matter, we find that the respondent was admitted to the practice of law in the State of Indiana on May 1, 1974. In September of 1991, the respondent contracted with Just The Fax, an Indiana corporation engaged in the business of selling, servicing and renting facsimile machines, to purchase a facsimile machine with an extended service contract. The purchase price was $2,158; it was discounted by $460 for quick payment, resulting in an adjusted purchase price of $1,698. The payments were to be made in three equal monthly installments of $566 per month, beginning on September 30, 1991. The respondent made two payments of $566, one on October 24, 1991, and one on December 10, 1991. Thereafter, he failed to make additional payments.

On February 9, 1993, the president of Just The Fax filed a suit against the respondent in the Marion County Small Claims Court, Center Township Division, seeking damages for breach of contract in the amount of $1,243. On February 26, 1993, the court granted a default judgment against the respondent for the amount sought plus costs. In May of 1993 the respondent, by counsel, sought and was successful in setting aside the default judgment on grounds of inadequate service, and the case proceeded to hearing on the merits. After a continuance, the case was set for hearing on October 28, 1993.

In the meantime, on October 5, 1993, the president of Just The Fax filed a grievance against the respondent with the Indiana Supreme Court Disciplinary Commission, complaining about the respondent's delinquent payment for the equipment and delays in the small claims proceeding. The Executive Secretary of the Commission forwarded the grievance to the Indianapolis Bar Association Grievance Committee for a preliminary investigation by one of the committee's members. The respondent was informed of the investigation. He did not submit a written response, but during a telephone conversation on January 6, 1994, with the assigned committee member, the respondent stated that he had written and mailed a letter (hereinafter identified as "Quick Letter") to the president of Just The Fax with an offer to compromise by canceling the service contract and paying the balance owed. The "Quick Letter" was dated December 7, 1991; it was addressed to Just The Fax, 546 S. Meridian, Indianapolis, Indiana 46225, referred to the bill invoice number, and stated as follows:

"Enclosed is $566.00 on the above referenced invoice. I hereby cancel any service contracts listed on this invoice (245.00 + 235 = 480). I talk (sic) with Wm Graebe and was told to settle this with you. I will do so for $86.00 ($566.00 − 480)."

The note was signed by the respondent and indicated that a copy had been sent to "Wm Graebe, PO Box 455, Greenfield, IN 46140." On January 12, 1994, the committee member assigned to this case prepared a written report of his investigation and recommended dismissal of the grievance, referring to the above letter as evidence of the respondent's version of the dispute.

The law suit filed by Just The Fax came to trial on January 20, 1994, and the respondent was sworn in as a witness. Under oath, he stated that he had not paid the final installment on the contract because he intended to cancel the extended service contract. He testified under oath that he had canceled the service contract by the above described note which he stated had accompanied the second payment. He testified under oath that he had written and mailed the "Quick Letter" on December 7, 1991, and that the copy was a true and accurate copy of the letter he had in fact sent to Just The Fax. The document was admitted into evidence. The respondent further testified under oath that he had mailed a courtesy copy of the letter to Attorney Will Graebe at P.O. Box 455, Greenfield, Indiana, as the president of Just The Fax had identified Graebe on December 7, 1991, as his attorney. The respondent testified under oath that he had spoken with Graebe by telephone on or before December 7, 1991, and that Graebe had instructed him to settle the matter directly with Just The Fax. This, the respondent testified, resulted in his mailing the December 7, 1991, "Quick Letter" to

Just The Fax with a courtesy copy to Graebe.

In fact, the December 7, 1991, "Quick Letter" was an after-the-fact fabrication. It was not in existence in 1991 and had never been mailed to Just The Fax or Graebe. The respondent knew it was a fabricated document and knew that it had never been sent as he claimed. In December of 1991, Graebe was a third year law student in North Carolina and had no knowledge of the existence of Just The Fax, and he had neither met nor communicated with the respondent at that time. The Greenfield address to which the respondent testified he had sent the "Quick Letter" was the address of the law firm which eventually employed Graebe as a law clerk during the summer of 1992 and as an associate in October of 1992. Graebe did represent Just The Fax for a period of time; however, this was not until some time after his admission to the Bar in October of 1992. Prior to the trial he had never received nor seen the "Quick Letter." Also, neither the president of Just The Fax, Just The Fax, nor the law firm which eventually employed Graebe ever received the "Quick Letter" dated December 7, 1991.

The Marion County Small Claims Court took the case under advisement. Thereafter, the respondent was confronted by affidavits that unequivocally established the falsity of the "Quick Letter," and he settled the case with Just The Fax for $2,000.

The respondent does not challenge the foregoing findings of fact nor does he deny that he engaged in professional misconduct. He argues, however, that his misconduct was not of the magnitude found by the hearing officer but a petty business dispute

which "arose out of his losing his temper and cool over a personal matter." In this vein, the respondent contends that the "Quick Letter" was not material to the initial investigation by the Indianapolis Bar Association Committee, that it had no value at the small claims trial because the case was settled and court never ruled on the merits, and that the letter was a mere proposal for settlement. This interpretation of the events grossly understates their seriousness. The findings are clear that the respondent failed to make the contract payment on his Fax equipment and, when confronted with the consequences, lied and created a false document in an attempt to bolster his position. Once created, the respondent used this false document to support his untruthful response to the Commission and his untruthful testimony, under oath, before the Small Claims Court. His reliance on the false "Quick Letter" as a defense to the small claim was without basis and in violation of *Prof.Cond.R. 3.1* [1]. By testifying that the "Quick Letter" was authentic when he knew this to be false, the respondent falsified evidence in violation of *Prof.Cond.R. 3.4(b)* [2], made a false statement of a material fact to a tribunal, in violation of *Prof.Cond.R. 3.3(a)(1)* [3], and offered evidence that he knew to be false, in violation of *Prof.Cond.R. 3.3(a)(4)* [4]. The respondent's use of the false "Quick Letter" had no substantial purpose other than to delay or burden his opponent, constituting conduct in violation of *Prof.Cond.R. 4.4* [5]. Further, we conclude that by sponsoring the "Quick Letter" as authentic, the respondent committed perjury, a criminal act defined by I.C. 35–44–2–1, and thereby violated *Prof.Cond.R. 8.4(b)* [6] by committing a criminal act that

1. *Prof.Cond.R. 3.1* provides that a lawyer shall not bring or defend a proceeding unless there is a basis for doing so that is not frivolous.

2. *Prof.Cond.R. 3.4(b)* provides, *inter alia*, that a lawyer shall not falsify evidence.

3. *Prof.Cond.R. 3.3(a)(1)* provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal.

4. *Prof.Cond.R. 3.3(a)(4)* provides, *inter alia*, that a lawyer shall not knowingly offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of

its falsity, the lawyer shall take reasonable remedial measures.

5. *Prof.Cond.R. 4.4* provides, *inter alia*, that in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person.

6. *Prof.Cond.R. 8.4(b)* provides that it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

reflects adversely on his honesty, trustworthiness and fitness as a lawyer in other respects. He engaged in conduct involving dishonesty, fraud, deceit and misrepresentation, in violation of *Prof.Cond.R. 8.4(c)* [7] and in conduct that is prejudicial to the administration of justice, in violation of *Prof.Cond.R. 8.4(d)* [8]. He knowingly made a false statement of material fact in connection with a disciplinary matter, in violation of *Prof. Cond.R. 8.1(a)* [9] and failed to disclose a fact necessary to correct a misapprehension, in violation of *Prof.Cond.R. 8.1(b)* [10].

 Having concluded that the respondent engaged in professional misconduct, this Court must now determine an appropriate discipline. This process involves an examination of the respondent's state of mind, the duty violated, actual or potential injury to the client, the duty of this court to preserve the integrity of the profession, the risk to the public, and any mitigating or aggravating factors. *Matter of Jarrett,* 657 N.E.2d 106 (Ind.1995); *Matter of Lustina,* 647 N.E.2d 317 (Ind.1995); *Matter of Frosch,* 643 N.E.2d 902 (Ind.1994). Also, the *American Bar Association Standards for Imposing Lawyer Sanctions* provide useful guideposts for assessing disciplinary sanctions. In regard to failure to maintain personal integrity, *Standard 5.1* proposes that, absent aggravating or mitigating circumstances, disbarment is generally appropriate when a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing or any other intentional conduct involving dishonesty, fraud, deceit or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice. The very nature of respondent's misconduct indicates an intentional course of conduct designed to deceive. He knowingly and deliberately created a false document and relied upon it for purely personal motive to extricate himself from a disciplinary investigation and to gain an unjust advantage in the law suit. This was not a single incident but a conscious and elaborate plan for deceit. At each juncture of this process, the respondent had an option to tell the truth or to continue with his artifice. We note that the respondent acknowledged his misdeed only after the falsehood was exposed by others.

We are also mindful of a number of mitigating factors to be considered in the imposition of a disciplinary sanction. The respondent has practiced law for more than twenty years with no disciplinary actions, and has served the Indiana State and Indianapolis Bar Associations in a number of capacities. At the time of the hearing he was the chair of the ADR Section of the Indiana State Bar Association, Subcommittee on Statewide Implementation. He was on the executive committee of the litigation section of the Indianapolis Bar Association as well as its former chairman. He has served as chairman of the Speakers Bureau of the IBA, on the executive committee for printed forms, and as chairman of an IBA seminar on cross examination. The hearing officer found that the respondent expressed remorse for his actions, although he did not apologize to the tribunal or to the other parties affected by his misconduct.

In light of the foregoing considerations, we find that a period of suspension for one year appropriately reflects the severity of the misconduct and the mitigating factors but allows the respondent to seek reinstatement in not too distant a future. This sanction comports with sanctions imposed by this Court in cases involving similar conduct. This Court has previously held that an attorney who engaged in a deliberate course of conduct designed to circumvent the eligibility requirements for Medicaid benefits engaged

---

7. *Prof.Cond.R. 8.4(c)* provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

8. *Prof.Cond.R. 8.4(d)* provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

9. *Prof.Cond.R. 8.1(a)* provides, *inter alia,* that a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter.

10. *Prof.Cond.R. 8.1(b)* provides, *inter alia,* that a lawyer shall not fail to disclose a fact necessary to correct a misapprehension known to have arisen.

in conduct involving deceit and illegality and warranted a suspension for not less than one year. *Matter of Price,* 429 N.E.2d 961 (Ind. 1982). Also, the preparation and submission of knowingly false documents in an administrative proceeding before the Social Security Administration warranted one-year suspension. *Matter of Brown,* 524 N.E.2d 1291 (Ind.1988).[11] In the latter case, the respondent had missed the filing date for a *Request for a Rehearing* and thereafter had submitted forms that falsely stated a timely filing. It is important to note that neither of the false statements made in the foregoing cases were made under oath before a tribunal.

We, thus, conclude that the respondent should be suspended from the practice of law for a period of one year beginning May 10, 1996. Costs of this proceeding are assessed against the respondent.

---

11. Upon petition for reconsideration showing, among other mitigators, her relative inexperience and the fact that she had been in practice for less than one year at the time of the misconduct, this Court reduced the suspension to six months. *Matter of Brown,* 529 N.E.2d 1308 (Ind. 1988).